THE MAYOR AND ALDERMEN OF JERSEY CITY, RE-
SPONDENT, v. THE HUDSON AND MANHATTAN RAIL-
ROAD COMPANY, APPELLANT.

Argued March 20, 1917—Decided June 18, 1917.

1. The word "each" in an ordinance of Jersey City, providing for
compensation to be paid the city, for the use of land privileges
by a railroad company, in connection with its three routes, de-
pending upon the amount of fare for each single passenger ser-
vice, means any route and not all three routes.
2. Where an ordinance by its terms does not constitute a contract
with a railroad company, for the use of land privileges, but
does provide an option, the railroad company cannot retain
the use of the privileges and refuse to pay the stipulated com-
pensation.
3. A continued exercise of the privileges by a railroad company,
under an ordinance accepted by it, evinces an election to pay
the stipulated compensation and thereby creates a legal obliga-
tion to pay. The language of the ordinance construed will be
found in the opinion.

On appeal from the Hudson County Circuit Court.

For the respondent, *James J. Murphy* and *John Bentley.*

For the appellant, *Collins & Corbin.*

The opinion of the court was delivered by

BLACK, J. The suit in this case was brought by the mayor
and aldermen of Jersey City against the Hudson and Man-
hattan Railroad Company, to recover compensation for the
conditional rights or occupancy, by the defendant company,
of certain land privileges, in the public street, at Henderson
and Grove streets, Jersey City, used by the defendant com-
pany for station purposes. The case was tried under a stipu-
lated state of facts, on the second count of the complaint only,
before Judge Speer at the Hudson Circuit, without a jury,
resulting in a judgment, in favor of the plaintiff, for the sum
of six thousand five hundred and twenty-five dollars ($6,525).

The suit grows out of the construction of sections three (3), four (4) and six (6) of an ordinance of Jersey City, which was accepted by the defendant company on September 29th, 1910.

Those sections read thus:

"Section 3. Said railroad company, its successors or · assigns, shall pay to the city, annually, except in the contingency hereinafter noted in section 4 hereof, for the right to use and occupy said tract of land aforedescribed in section 1 hereof, and so long as it shall so use and occupy the same, in addition to such taxes or assessments which may be legally levied upon its personal and real estate by the city of Jersey City, or by any other authority, the sum of one hundred ($100) dollars for the first year of occupancy dating from the acceptance of this ordinance and thereafter like payments for the entire period of the life of this ordinance. The permission to use and occupy said tract of land aforedescribed to continue and remain in force so long as the rate of fare charged by said Hudson and Manhattan Railroad Company, its successors or assigns, between the Grove and Henderson street stations and Thirty-third street and Broadway, New York, and intermediate stations, and between the said Grove and Henderson street stations and the Hudson terminal, in New York, and intermediate stations, and between said Henderson and Grove street stations and Hoboken, New Jersey, and intermediate stations, shall not exceed for each single passenger service, one way, and in either direction, the sum of five cents."

"Section 4. If, at any time, after the passage and acceptance of this ordinance the said Hudson and Manhattan Railroad Company, its successors or assigns, shall proceed to charge and exact a fare exceeding five cents for each single passenger service as described in section 3 hereof, then and thereupon said railroad company shall immediately surrender to the city all privileges herein and hereby granted or then the annual payment to be made by said railroad company, its successors or assigns, for the use and occupancy of the tract of land aforedescribed, shall in lieu of the amount of annual

payment indicated in section 3 of this ordinance and in substitution therefor, be five thousand ($5,000) dollars to be computed from the date of exaction by said company of such excess fare—such payment of five thousand ($5,000) dollars to be in addition to such taxes or assessments which may be legally levied upon its personal and real estate by the city of Jersey City or by any other authority and to so continue for each and every year during the continuance of such increased rate. The said railroad company shall have the right of election hereunder.

"If by reason of the enforcement of the provisions of this section there shall have accumulated a deficiency in the annual payment herein in this section contingently required to be made, such accumulation shall in its entirety be paid by said company on the first payment day thereafter ensuing and as hereinafter provided."

"Section 6. Proper proportions of the payments of the city herein provided for shall be made in advance to the city comptroller at his office in the city hall, on the first days of October and April next succeeding the acceptance of this ordinance, failing which payment for thirty days or a failure by said company to comply with all or any of the terms, requirements or obligations of this ordinance as heretofore expressed shall constitute an annulment of any and all permissions herein or hereby accorded, and the city may thereupon remove any and all obstructions herein authorized and restore any affected street or portion thereof at the entire cost and expense of said company without prior notice and without recourse to it."

Some of the additional facts pertinent to this discussion are: The defendant railroad company, from the time it began operations, charged only five cents for each passenger service, from the Grove and Henderson street station eastward thereof, on any of its lines, until December 24th, 1911, when it raised its rate of fare to seven cents, between the Grove and Henderson street station and the stations in New York City on the Thirty-third street line. It did not increase the rate to the Erie station, to Hoboken, to Exchange Place, in Jer-

sey City, or to the Hudson terminal, in New York, the rate to those stations from Grove and Henderson street station and from Summit avenue station, remaining five cents—that is, passengers who go to New York from the Grove and Henderson street station, by way of the uptown line, are charged two cents extra fare to New York stations, and to those only.

There are five grounds of appeal—*first,* no breach of the alleged contract; *second,* no election under the fourth section of the ordinance; *third,* acceptance of $100 per year by Jersey City after the increase of fare was a construction, by the parties to the contract that it had not been broken, by such increase.

The other two grounds of appeal—the fourth and fifth—are purely formal.

The argument is, the use of the conjunction "and" in section 3 of the ordinance, where reference is made to the three lines of the railroad and intermediate stations in connection with section 4, makes section 3 mean that the permission stands until the rate of fare is increased above five cents on all three lines; that for each single passenger service, one way or in either direction, means for all the lines, but we think the natural and intended meaning of the word "each" in this connection means "any," *i. e.,* any one of the three lines.

It is next argued, the ordinance does not constitute a contract to pay; at best, it provides, merely, for an annulment. It may be conceded that section 4, in itself, does not constitute a contract to pay, but it gives the railroad company the option either to surrender its privileges to the city or to pay the five thousand dollars ($5,000). When the railroad company continues exercising the privileges, it evinces an election to pay the increased amount, and it thereby becomes in law liable to pay. Section 6 does not militate against this conclusion. That section provides, simply, that the failure to make the payment of five thousand ($5,000) dollars shall constitute an annulment of the permission granted. The city may thereupon enter and remove obstructions.

This is nothing more than the ordinary clause of forfeiture in a lease. It hardly seems reasonable, and it cannot be rea-

sonable, that one can have the option to make a contract valid or invalid, as he chooses; that he can retain the privileges and get rid of the obligation by refusing or failing to perform his part by paying the stipulated amount for the privileges so retained.

The other points need no discussion, they are without legal merit.

The judgment of the Circuit Court is therefore affirmed, with costs.

*For affirmance*—THE CHANCELLOR, GARRISON, SWAYZE, TRENCHARD, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, JJ.   13.

*For reversal*—None.